UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO.: 3:12-CV-00068

| | |
|---|---|
| ESSEX INSURANCE COMPANY, | ) |
| Plaintiff | ) |
| v. | ) |
| | ) **ORDER** |
| CHAMPIONSHIP CHARTERS, INC. | ) |
| JOSEPH CLIFTON CHAMPION, | ) |
| RICHARD G. COPPICK, THE | ) |
| ADMINISTRATOR OF THE | ) |
| ESTATE OF NATHAN RICHARD | ) |
| COPPICK, and JESSICA YOUNG, | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court upon Defendants Richard G. Coppick, Administrator of the Estate of Nathan Richard Coppick, and Jessica A. Young's (collectively, "the Defendants") Motion to Dismiss Plaintiff's Declaratory Judgment Action, [Doc. No. 20], Plaintiff's response, [Doc. No. 22], and Defendants' reply [Doc. No. 23]. For the reasons stated herein, the Defendant's Motion to Dismiss is GRANTED.

**I. Background**

Plaintiff Essex Insurance Company ("Essex") filed the present action seeking a declaratory judgment that the Defendants have no claims of indemnity or garnishment against Essex, by or through Defendant Joseph Clifton Champion ("Champion") or Defendant Championship Charters, Inc. ("Championship Charters") stemming from claims asserted in the North Carolina Superior Court in Lincoln County. [Doc. No. 1].

This matter stems from two underlying lawsuits, *Estate of Coppick v. Hobbs Marina Properties, LLC, et. al.* and *Young v. Hobbs Marina Properties, LLC, et. al.* ("the underlying

1

actions"), currently pending in Lincoln County Superior Court.  In the underlying actions, the Defendants allege negligence and gross negligence against all of the named defendants.  Both underlying causes of action stem from an explosion which occurred at the Hobbs Westport Marina, located on Lake Norman in Denver, North Carolina, on June 10, 2008.  On that day, a private charter boat, the Championship II, owned by Championship Charters, is alleged to have contributed to the cause of the explosion which injured Jessica A. Young and killed Nathan Richard Coppick.  Champion is the sole shareholder of Championship Charters.

Essex provided vessel protection and indemnity insurance coverage to Championship Charters under an Ocean Marine policy.  [Doc. No. 1 ¶ 9].  The Ocean Marine policy provided protection and indemnity coverage to Championship Charters for the period July 6, 2007 to July 6, 2008.  [*Id*.].  After the underlying actions were filed, Essex began defending Championship Charters and Champion under a full reservation of Essex's rights under the Ocean Marine policy. [*Id.* ¶ 12].

On February 6, 2012, Essex filed a complaint in this Court seeking a declaration pursuant to Declaratory Judgment Act.  [Doc. No. 1].  Essex contends the Ocean Marine policy does not provide coverage to the Defendants because the Defendants are specifically excluded under a "Crew and/or Employee" exemption to coverage.  [*Id.* ¶¶ 23-25].   The Defendants timely filed a Motion to Dismiss Plaintiff's Declaratory Judgment Action on the grounds of "comity, federalism, deference, and judicial economy."  [Doc. 20-1, at 3].  Defendants ask this Court to decline jurisdiction over Essex's petition for declaratory relief because the issues are better resolved in state court.

## II. Discussion

Under the Declaratory Judgment Act, a district court may declare "the rights and other legal relations of any interested party." 28 U.S.C. § 2201. The Declaratory Judgment Act is an "enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). When a district court is determining whether to exercise its discretion and extend jurisdiction under the Declaratory Judgment Act, the court considers four factors: (1) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in state courts; (2) whether the issues raised in the federal action can more efficiently be resolved in the pending state court action; (3) whether the federal action might result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or of law; and (4) whether the federal action is being used merely as a device for "procedural fencing," i.e. to provide another forum in a race for *res judicata*.[1] *Continental Cas. Co. v. Fuscardo*, 35 F.3d 963, 966 (4th Cir. 1994) (*citing Nautilus Ins. Co. v. Winchester Homes*, 15 F.3d 371, 377 (4th Cir. 1994).

**1. North Carolina has a Strong Interest in Having the Issues Raised in this Declaratory Judgment Action Decided in State Courts.**

Courts consider more than whether the disputed legal issue revolves solely around state law. *NGM Insurance Co. v. Evans*, 642 F. Supp. 2d 511, 515 (W.D.N.C. 2009). Where the issue before the district court involves "the routine application of settled principles of law to particular disputed facts," the state's interest in hearing the case is weak. *Nautilus*, 15 F.3d at 378. When the application of state law is "difficult, complex, or unsettled," however, the state's

---

[1] The Defendants concede Essex is not using this declaratory judgment action as procedural fencing. [Doc. No. Doc. 20-1, at 13.].

3

interest outweighs a federal court's interest in deciding an issue of law. *Id.* Even where a state has already considered the issue at hand, if the district court determines that the decision of a state court would be uncertain, this factor weighs in favor of dismissing a Declaratory Judgment action. *Continental Casualty co. v. Fuscardo*, 35 F.3d 963, 967 (4th Cir. 1994).

The issue before this Court is whether a North Carolina State Court would classify the Defendants as Crew and/or Employees under the Ocean Marine policy purchased by Championship Charters from Essex Insurance Company.

Plaintiff argues this issue is not difficult, complex, or unsettled because other state and federal courts have found guidance from federal maritime law in determining whether an individual was a member of the crew for the purposes of insurance coverage. Plaintiff also argues that the fact that North Carolina courts have not specifically addressed this coverage interpretation issue does not make it unsettled. Plaintiff points to three cases in an attempt to show the determination of whether the Defendants were a member of the crew is not difficult, complex, or unsettled. *Fireman's Fund Ins. Co. v. Cox*, 742 F. Supp. 609, 610 (M.D.Fl. 1989); *Williams v. Fab.Con, Inc.,* 990 F.2d 228 (5th Cir. 1993); *Kearny Barge Co. Inc., v. Global Ins. Co., 943 F. Supp 441 (D.N.J. 1996).* The Court has considered these cases and is not convinced that these cases establish that the issue before this Court is not difficult, complex or unsettled.

Defendants point out that Plaintiff is asking this Court to interpret a North Carolina insurance policy, apply North Carolina law and determine that North Carolina courts would look to maritime definitions of the applicable terms, in order to determine an issue that has not ever been address in the North Carolina courts. Furthermore, it is not clear whether maritime law definitions to the present coverage issue would be appropriate given that the specific portion of Lake Norman at issue in this litigation may not be considered "navigable." *Jones v. Duke Power*

4

*Co.*, 501 F. Supp. 713, 720 (W.D.N.C. 1980)(stating that "there [was] no evidence that [any] zone of navigability [of the waters of Lake Normal] extended north of the present Cowan's Ford dam"); *In re Petition of Houser*, 227 F. Supp 81, 87 (W.D.N.C. 1964)( holding that the impounded waters of the Catawba River which formed Lake Hickory were not navigable waters of the United States and stating that "to contend the waters of the Catawba River in North Carolina are navigable is to state a supposed fact which has little if any merit"); *see also Alford v. Applachian Power Co.*, 951 F.2d 30, 33-34 (4th Cir. 1990) (holding that the district court properly concluded that Virginia's Smith Mountain Lake was not a body of water that was navigable for purposes of admiralty jurisdiction given that it was a "dammed, lockless lake lying wholly within the State of Virginia").

The Court finds that the issue of North Carolina law raised in Plaintiff's Declaratory Judgment as to the legal status of the Defendants is new and unsettled, and thus weighs in favor of declining jurisdiction.

**2. The Issues Raised in the Federal Action Can More Efficiently be Resolved in the Pending Sate Court Action.**

"Efficiency is determined by whether the issues presented can best be settled in the pending state court proceedings rather than in federal courts." *NGM Insurance Co. v. Evans*, 642 F. Supp. 2d 511, 516 (W.D.N.C. 2009). This requires courts to look into the "scope of the state court proceeding" including "whether the claims of all the parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." *Nautilus*, 15 F.3d at 378-79 (*quoting Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942). The court must determine if the issues raised in the federal court can be better settled in the "pending state

5

court proceedings. *Id.* at 378. Federal courts should not gratuitously interfere with a pending state court proceeding where the state court proceeding allows the "opportunity for ventilation" of the issue between the parties. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995). Where the state and federal action stem from the same set of operative facts, the balance is tipped in favor of declining jurisdiction, even if there is no pending state court claim. *Mitcheson v. Harris* 955 F.2d 235, 239 (4th Cir. 1992). Indeed, "[t]here is no requirement that a parallel proceeding be pending in state court before a federal court should decline jurisdiction over a declaratory judgment action." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998)). The presence of additional defendants, additional issues, and the prior undertaking of significant discovery in an underlying state court action have been considered "particularly salient" factors by federal trial courts in making the decision to decline jurisdiction over a declaratory judgment action addressing the duty to defend based upon insurance coverage exclusions. *Wausau Underwriters Ins Cp v. DM Farms of Rose Hill, LLC*, 2008 WL 2148831 at *4 (E.D.N.C. 2008) (*citing Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996).

Here, although Essex is not a party to the underlying state court lawsuit, and there is currently no parallel insurance coverage action pending in state court, this Court finds that the factual issues that relate to the underlying liability action and the issues relating to the present declaratory judgment action may overlap and could be more effectively adjudicated in the state court.

6

**3. Permitting the Federal Action to Go Forward Would Result in Unnecessary Entanglement Between the Federal and State Court Systems, Because of the Presence of Overlapping Issues of Fact or Law.**

Issues overlap either when they are being litigated in the related state court action or "where the court must resolve some factual question at issue in the state court proceeding." *NGM Ins.*, 642 F. Supp. 2d at 517 (citing *Wausau Underwriters*, 2008 WL 2148831 at *1).

Here, litigation of Plaintiff's coverage defense would require discovery and developing evidence about issues in the underlying liability case – most notably the relationship between Cliff Champion and the Defendants.[2] Therefore, this Court finds that there would be an entanglement with issues being litigated in the underlying state action.

**III. Conclusion**

Given the unsettled issues of North Carolina law implicated in Essex's indemnity claim against the Defendants and the overlapping issues between the declaratory judgment action and the underlying state court action, it is in the interest of judicial efficiency and comity that this Court decline jurisdiction over the declaratory judgment action and dismiss the case without prejudice. While Essex did not bring this action merely as a device for procedural fencing, when looking at the case as a whole and considering all of the Fourth Circuit factors, this Court declines to accept jurisdiction over Plaintiff's Complaint for Declaratory Judgment. Plaintiff may file their declaratory judgment action in the North Carolina state court. While Essex makes cogent arguments, when looking at the case as a whole and considering all of the Fourth Circuit's factors together, the balance is tipped in favor of allowing the North Carolina courts to resolve the issues raised in this case.

---

[2] The Court notes that there has been discovery on this issue in the underlying state lawsuits. [See Doc. No. 201-n.1].

7

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss is GRANTED.

**SO ORDERED.**

Signed: February 13, 2013

Graham C. Mullen
United States District Judge